UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **TROY ADAM AUTIN** | : | **DOCKET NO. 17-cv-1035** |
| D.O.C. # 452745 | | SECTION P |
| **VERSUS** | : | **JUDGE JAMES D. CAIN, JR.** |
| **TERRY COOLEY, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a Motion for Summary Judgment filed on October 23, 2019, pursuant to Rule 56 of the Federal Rules of Civil Procedure by defendants Misty Mancil ("Mancil"), Trisha Johnson and ("Johnson") Anthony Allemand ('Allemand') (collectively referred to as "the defendants"). This motion was filed in response to the original (doc. 1) and amended complaints (doc. 20) filed pursuant to 42 U.S.C. § 1983 by plaintiff Troy Adam Autin ("Autin").  Doc. 58. Also before the Court is a Motion for Summary Judgment and a supplemental memorandum in support filed on December 26, 2019, by plaintiff Autin.  Docs. 72, 76.

These motions have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For the following reasons, **IT IS RECOMMENDED** that the defendants' Motion for Summary Judgment (doc. 58) be **GRANTED** and the plaintiff's Motion for Summary Judgment (doc. 72) be **DENIED**.

**I.**
**BACKGROUND**

Autin is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated at the Rayburn Correctional Center in Angie, Louisiana,

but his claims arise from events that occurred while he was an inmate at Allen Correctional Center ("ACC") in Kinder, Louisiana. Autin alleges that in August 2013, while housed at ACC, he was he was "made to look like he was the informant" in a situation involving contraband in the facility. Doc. 20, pp. 3-4. He was transferred out of ACC, alleging that his life would be in jeopardy if he were ever to return. *Id*. at p. 4.

On July 27, 2016, Autin was shipped from Elayn Hunt Correctional Center ("EHCC") back to ACC. *Id*. at p. 5. Autin alleges that, upon his transfer from EHCC to ACC, he was taken off his prescribed pain and mental health medications by ACC Nurse Trisha Johnson and placed on an inadequate substitute pain medication. *Id*.

Furthermore, Autin alleges that on August 19, 2016, he was approached on the Earth Unit by multiple inmates who threatened him with physical harm. *Id*. at p. 6. He states that he informed Sergeant Lynda Ware, who was working the Earth Unit, of his need for protective custody, and that the sergeant "shook her head (yes) and went into the key to report the situation . . . but the key [s]ergeant was on the phone, so [Autin] walked toward his bed area in the back of the dormitory." *Id*. There, he claims, multiple offenders surrounded him with knives and locks placed in socks, made demands, and began to beat and stab him. *Id*. at p. 7.

After exiting the unit plaintiff was taken to the prison infirmary where he was seen by medical staff and treated for a stab wound in the neck. He was transported to St. Patrick Hospital in Lake Charles and later to Lafayette General Hospital where he was admitted for a stab wound and "multiple penetrating injuries." *Id*. at p. 8; Doc. 58, att. 3, p. 3. According to hospital records, he was treated and discharged in "stable" condition, "medically cleared for incarceration." Doc. 58, att. 3, p. 6.

A progress note dated August 20, 2016, shows that plaintiff was in "iso cell 1" for observation and was noted to be resting quietly in his bed, denying any complaints. *Id*. at p. 14. On August 23, 2016, it was noted that he was still in "iso cell 1," that his dressing was intact and dry and, while he did not appear to be in distress, he was complaining of not having a bath in five days and declared a hunger strike, refusing his breakfast tray. *Id*. A progress report from later that day shows that he complained of pain and wanted an increase in his medication. *Id*.

Finally, a progress note dated August 25, 2016, shows that plaintiff was "feeling better and ready to go to dorm. Neck pain resolved." *Id*. at p. 13. While he complained of right shin pain, it was noted that his range of motion in the neck was "much better w/o pain." *Id*. It was noted that he would be allowed to bathe. *Id*. Progress notes state that he was ambulating without difficulty and with no new complaints. *Id*. He was discharged to the dorm with a plan to continue wound care, monitor his wounds, remove sutures per the orders from the hospital discharge, and continue current medications. *Id*.

Autin further alleges that Sergeant Misty Mancil reviewed the security camera footage relating to the beating and, in an effort to cover up the attack, wrote up Autin for fighting but did not mention the stabbing. *Id*. at pp. 7-8. Autin claims that stabbings occur on a daily basis but also states that ACC staff do not conduct shakedowns until someone is stabbed. *Id*

Autin filed the instant suit on August 14, 2017. Doc. 1. After conducting an initial review on December 28, 2017, this Court ordered plaintiff to amend his complaint to resolve certain deficiencies. Doc. 17. An Amended Complaint was filed on February 23, 2018. Doc. 20. Autin's claims, as summarized by the defendants, are as follows: (1) that the defendants failed to protect him from other inmates in a way that violated his Constitutional rights, (2) that defendant Trisha Johnson failed to provide adequate medical care in a way that violated his Constitutional rights,

and (3) that defendant Misty Mancil denied his access to the courts in a way that violated his Constitutional rights.

On March 5, 2018, the undersigned recommended dismissal of defendant Wayne Calabrese, named only in his supervisory capacity. Doc. 23. On that same date, service was ordered on the remaining defendants. Doc. 24. On March 6, 2019, defendants Dr. Chatman, Nurse West, Nurse Hebert, Nurse Summer, Lynnda Ware, Captain King and Terry Cooley were dismissed for failure to serve. Doc. 44.

On October 23, 2019 and December 26, 2019, the parties filed the motions presently before the Court.

## II.
## LAW & ANALYSIS

### A. *Legal Standards*

#### 1. *Summary Judgment Standard*

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2553 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id*. Ordinarily, summary judgment may not be granted merely because no opposition has been filed. *See Luera v. Kleberg Cnty., Tex.*, 460 Fed. App'x 447, 449 (5th Cir. 2012) (per curiam).

Once the movant makes this showing, the burden then shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986). The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law. *Celotex Corp.*, 106 S.Ct. at 2553. There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014). Furthermore, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). However, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 106 S.Ct. at 2511.

### 2. *Section 1983*

Autin brings his Eighth Amendment claims under 42 U.S.C. § 1983. Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. In order to hold defendants liable under 42 U.S.C. § 1983, a plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. *West v. Atkins*, 108 S.Ct. 2250, 2254–55 (1988). Thus, if the claim does not rise to the level of a constitutional violation, it is not cognizable under § 1983.

### B. *Failure to Protect*

Autin alleges that prison officials failed to protect him from the attack he sustained at the hands of fellow inmates.

Prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates. *Farmer v. Brennan*, 114 S. Ct. 1970, 1976-77 (1994); *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). However, prison officials are not expected to prevent all inmate-on-inmate violence. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). A showing of negligence by the official is insufficient to support Eighth Amendment liability. *Id*. at 514. Rather, prison officials are only liable under the Eighth Amendment when they are "deliberately indifferent" to a "substantial risk of serious harm." *Longoria*, 473 F.3d at 592; *Adames*, 331 F.3d at 512.

An official acts with the requisite deliberate indifference if he is aware of an excessive risk to inmate safety and disregards that risk. In this context, an officer's awareness of the risk is evaluated subjectively. *Longoria*, 473 F.3d at 592-93. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must in fact also have drawn the inference. *Id*.

If an official "reasonably responded" to a known substantial risk to the plaintiff, he or she is not liable under the Eighth Amendment, "even if the harm was ultimately not averted." *Farmer*, 114 S. Ct. 1970, 1982-83; *see Longoria*, 473 F.3d at 593. A defendant's personal involvement is an essential element of a civil rights cause of action, meaning that there must be an affirmative link between the injury and a defendant's conduct. *Delaughter v. Woodall*, 909 F.3d 130, 136-37 (5th Cir. 2018). Notably, an officer's knowledge of the mere fact that an inmate is an informant

is insufficient to prove that the officer has knowledge of a substantial risk of harm to the inmate. *Longoria*, 473 F.3d at 594.

In support of the argument that the plaintiff cannot prevail on a claim for failure to protect, the defendants rely heavily on the Fifth Circuit's ruling in *Longoria v. Texas, supra.* In that case, an inmate's claims against prison officers was dismissed on summary judgment. The Court held that the fact that officers had known that an inmate was an informant, and that he had requested protection, did not prove knowledge of a substantial risk of harm. *Id* at 594.

Plaintiff makes a vague and conclusory allegation that defendants Allemand and Mancil knew that prisoners possessed weapons and failed to provide safe housing and human conditions in which prisoners could live without being subjected to unreasonable risk of harm. Doc. 20, pp. 9-10. Plaintiff alleges that prison officials failed to perform mass shakedowns or request added assistance and security personnel once it became known that the prisoners possessed dangerous weapons. *Id*. at p. 10.

To counter plaintiff's allegations of the defendants' failure to protect him from harm, defendants attach as an exhibit to their motion the sworn affidavit of defendant Misty Mancil. Through that affidavit she testified that she was not aware that Autin had been previously housed at ACC, nor was she aware that he had either been an informant or had been made to look like an informant in the past, or that he wanted or needed to be placed in protective custody. See Doc. 58, att. 6, p. 1. She was never informed by Autin, or anyone else, that Autin had enemies or was in danger of being attacked by other inmates, nor was she informed by Autin or anyone else that there were inmates in Earth Unit with weapons and/or that those inmates planned to attack Autin. *Id*. She was not in Earth Unit at the time of the subject altercation as her shift had not yet started. *Id*. Her only involvement in this matter arose from her role in reviewing camera footage subsequent

to the altercation and issuing a rule violation against Autin in accord with prison procedures.[1] Plaintiff did not refute Mancil's statements.

The sworn affidavit of defendant Anthony Allemand is also attached as summary judgment evidence. In that document he states that he was not aware that plaintiff had been an informant, or made to look like an informant, during his previous stay at ACC. Doc. 58, att. 7, p. 1. He states that he never received any notification, from Autin or otherwise, that Autin wanted to, or needed to, be placed in protective custody, that Autin was in danger of being attacked by other inmates, or that he had enemies from whom he needed to be separated. *Id*. Allemand never received notice, from Autin or anyone else, that there were inmates at Earth Unit with weapons and/or that they may have been planning to use weapons to attack Autin and, had he been aware, he would have taken the necessary steps to protect Autin, such as moving him to protective segregation. *Id*. He was not present in Earth Unit at the time Autin was attacked. *Id*. He states that cells and dorms are randomly searched on a daily basis at ACC to find contraband and, when specific information is obtained that inmates have contraband, investigations and focused searches are performed to find and confiscate that contraband. *Id*. Autin did not refute Allemand's statements.

The defendants' affidavit testimony stands unrefuted by any competent summary judgment evidence. Even if the defendants had known that plaintiff had been an informant or been made to look like one in the past, that information is stuff insufficient to show that he was aware of any substantial risk to plaintiff. *Longoria, supra*, at 594.

Conversely, the evidence before this Court establishes that ACC had security procedures in place in which searches were performed daily to locate and confiscate contraband. *See* Doc. 58, att. 6, p. 2; *see also id*. at att. 7, p. 2. Plaintiff has failed to offer any evidence to support his claims

---

[1] It is this report that forms the basis for Plaintiff's claim that Mancil attempted to deny his access to the courts. That claim is addressed separately below.

that defendants deliberately ignored his request for protection. Accordingly, the Court finds that defendants' motion for summary judgment on plaintiff's failure-to-protect claims should be granted. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) ("Mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment.").

### C. Failure to Provide Adequate Medical Care

Autin also claims that defendant Trisha Johnson, a nurse in the medical department at ACC, violated his constitutional right by failing to provide adequate medical care.

In order to prevail on a claim for failure to provide adequate medical care, a plaintiff must show: (1) he was exposed to a substantial risk of serious harm; and (2) that prison officials acted or failed to act with deliberate indifference to that risk. *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006).

First plaintiff complains that in 2016, when he was transferred from EHCC back to ACC, he was taken off of all of his mental health and pain medication by Nurse Trisha. Doc. 20, p. 5. He states that it was her "evil intent" to take him off his pain medication. *Id*. Later in his pleading, however, he acknowledges that he did receive medication for pain, just not that which was originally prescribed. Nurse Johnson testified in her sworn affidavit that the decisions medication were made by the physicians, not her. Doc. 58, att. 5, p. 1. She testified that all medical treatment provided to Autin was at the instruction of his physicians, including those at ACC and those at the hospitals where he received treatment. *Id*. The responsible facility physician at ACC at the time the incident at issue herein, according to the medical records attached to the instant motion, was Eric Chatman. *Id*. at att. 3, p. 28. Nurse Johnson has offered uncontroverted evidence that she was not personally involved in any decisions concerning plaintiff's medical care or medications.

Thus, as a matter of law, plaintiff fails to establish that Nurse Johnson was deliberately indifferent to his serious medical needs because he cannot establish that she ignored any medical need. *See Alexander v. Kukua*. 2011 U.S. Dist. LEXIS 88234, 2011 WL 489837 at *18-19 (S.D. Tex., July 26, 2011).

Second plaintiff complains that he contracted Hepatitis C because he was not allowed to bathe for a number of days after the incident. Plaintiff provided no evidence that he did, in fact, contract Hepatitis C, and if he did, how he contracted it. Even if plaintiff had somehow tied his hepatitis to lack of bathing during that period, Nurse Johnson's affidavit states affirmatively that she played no role in whether or not Autin showered or bathed. *Id*. at p. 2. She states she had "no control over whether, how, or when inmates bathe or shower, even when they are housed in the observation cells in the medical department. That is a function of security officers. Further, nurses, such as myself, do not issue orders stating whether or not patients are allowed to shower/bathe." *Id*. Again, as Johnson has offered uncontroverted evidence that she was not personally involved in any decisions concerning whether plaintiff was able to bathe or shower, as a matter of law, plaintiff fails to establish that Nurse Johnson was deliberately indifferent to his serious medical needs. *See Alexander, supra.*

At best plaintiff's complaint indicate that he disagrees with the treatment provided. Disagreements over treatment decisions constitute, at most, claims of medical malpractice appropriately addressed under state law. *Estelle v. Gamble*, 97 S. Ct. 285, 293 (1976). As there is no genuine issue of material fact on plaintiff's deliberate indifference claim, defendants are entitled to summary judgment on this issue.

### D. Access to the Courts

Finally, Autin contends that Misty Mancil denied him access to the courts by trying to cover up and hide the fact that plaintiff was stabbed. Doc. 20, pp. 7-8. He alleges, "'Sergeant Misty Mincil' (sic) reviewed the camera's (sic) and Plaintiff received an RVR for a Rule #10 Fighting, she didn't say anything about Plaintiff being stabbed or attackers having knives, she had Evil Intent to try and hide the stabbing situation." *Id*.

"It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). *See Bounds v. Smith*, 97 S.Ct. 1491 (1977); *Johnson v. Avery*, 89 S.Ct. 747 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id*. (*citing Lewis v. Casey*, 116 S.Ct. 2174, 2180 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993); *Lewis v. Casey*, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d 286, 290 (5th Cir. 1997); and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).

Plaintiff has been unfettered in his ability to litigate the instant lawsuit. He has been permitted to file an original complaint and an amended complaint. He has filed numerous motions into the record, including the cross motion for summary judgment and supplemental memorandum in support of this motion, presently before this Court.

Mancil's affidavit shows that her only involvement in this matter was to review the video cameras for the purpose of issuing rule violations for the altercation. Doc. 58, att. 6, p. 2. Mancil

states that, per procedure, everyone identified in an altercation is written up, and issues of who started a fight, versus who was a victim, are handled at the disciplinary hearing stage. *Id*. Mancil further speaks to the quality of the video she reviewed, noting that cameras are located at the front of each tier and are poor quality. *Id*. Mancil states that, while it would have been difficult, if not impossible, for her to have been able to see whether other inmates had knives in their hands, as the video would have been too blurry, she has never tried to cover up the stabbing, deny that any inmates stabbed Mr. Autin, or said or done anything in order to block Autin's access to the courts. *Id*. Plaintiff has failed to provide any evidence that he was denied access to the courts. His conclusory allegations are insufficient to create a genuine issue of material fact and, accordingly, defendants are entitled to summary judgment on this claim.

### III.
#### CONCLUSION

For the foregoing reasons,

**IT IS RECOMMENDED** that the defendants' Motion for Summary Judgment (doc. 58) be **GRANTED** and that the action be **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the plaintiff's Motion for Summary Judgment (doc. 72) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that plaintiff's motion to compel discovery (doc. 81) and motion to subpoena discovery (doc. 82) be **DENIED** as **MOOT**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking

either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 29th day of January, 2020.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE